IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| GRACIE LOPEZ, | § | |
| | § | |
| Defendant, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 1:08-cv-510-SS |
| | § | |
| WOLPOFF & ABRAMSON, LLP and | § | |
| LVNV FUNDING LLC, | § | |
| | § | |
| Plaintiffs. | § | |

**AFFIDAVIT OF MANUEL H. NEWBURGER IN SUPPORT OF
PLAINTIFF WOLPOFF & ABRAMSON, LLP'S
<u>MOTIONS FOR RELIEF UNDER FED. R. CIV. P. 11 AND 28 U.S.C. § 1927</u>**

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF TRAVIS | § |

Before me, the undersigned authority, on this day personally appeared Manuel H. Newburger, known to me by his Texas Driver's License number and who, after being by me duly sworn, upon his oath stated as follows:

"My name is Manuel H. Newburger. I am over eighteen years of age, of sound mind, and fully competent to make this affidavit. I am the lead attorney for Defendant Wolpoff & Abramson, LLP ("Wolpoff") and in that capacity and in my capacity as President of Barron, Newburger, Sinsley & Wier, PLLC I have personal knowledge of the matters set forth in this affidavit.

"Defendant Wolpoff has filed two motions seeking an award of fees and expenses in this case. The first seeks fees and costs for the entire case pursuant to Fed. R. Civ. P. 11. The second seeks fees and costs associated

with defense of Plaintiff's class action allegations pursuant to 28 U.S.C. § 1927. This affidavit is offered in support of both motions.

"The attached <u>Exhibit A</u> consists of ____ pages of bills taken from the billing records of Barron, Newburger, Sinsley & Wier, PLLC. <u>Exhibit A</u> is incorporated herein by reference as if fully set forth verbatim.

"The attached bills are generated from the regular time records that were kept by me in the regular course of business. The information contained in the records was recorded by me in the regular course of business, and I had personal knowledge of the information. The records were made at or near the time or reasonably soon after the time that the services were provided. The information contained in these records is an exact duplicate of data fields in the original Timeslips data entry screens.

"The services I provided were necessary and the amounts that I charged for the services were reasonable at the time and place that the service was provided. Such services were necessary in this case. Furthermore, the fees described in <u>Exhibit A</u> were reasonable and necessary when one takes into account the following factors:

A. The Time and Labor Required

"With regard to the time and labor required, the attached <u>Exhibit A</u> is a true summary of my firm's time records pertaining to this case through the time of this affidavit. It is my opinion that all of the time reflected in the attached records is properly attributable to this case and that such time is reasonable and

necessary in this case.

"Defendants deliberately refrained from engaging in wasteful motion practice. Although they felt that Plaintiff's suit was based upon frivolous theories, because the Original Petition alleged misrepresentations by Defendants they felt that a motion under Fed. R. Civ. P. 12(b)(6) was inappropriate and, at best, likely to result in a motion for leave to amend. They did not seek summary judgment or judgment due to the pending motion for class certification.

"The Defendants were unable to depose the Plaintiff prior to September 11, 2008, a necessary prerequisite to a comprehensive motion for summary judgment. While the Defendants could have filed a motion for summary judgment on the pleadings, only, they did not want to burden the Court with multiple summary judgment motions, preferring instead to secure the deposition testimony necessary to seek judgment on the case in its entirety. By the time that the Defendants were able to obtain the transcript of the Plaintiff's deposition, the deadline for filing their response to the motion for class certification (previously extended by the Court until October 1, 2008) was less than two weeks away. As the Court can determine from the attached Exhibit A, there was time for little else between the acquisition of the deposition transcript and the filing of the Defendants' Response to Motion for Class Certification.

"<u>Exhibit A</u> shows that Defendant's legal fees have been incurred in the defense of this litigation, and on matters on which Defendant has been successful thus far. The vast majority of the Defendant's legal fees have been

incurred in defense of the Plaintiff's class action allegations.

"If this had been an individual action by Ms. Lopez, it is my opinion that the case would have been far simpler both factually and legally, and that case would have probably been concluded with a motion for summary judgment within thirty days after the taking of Plaintiff's deposition. Instead, it was necessary to answer the suit, effectuate the removal to federal court, depose not only Ms. Lopez, but also her attorney, prepare the response to the Motion for Class Certification, and prepare for and participate in the class certification hearing. My time would have been substantially greater if Ed Walton, attorney for Defendant LVNV, had not shared much of the work.

## B. The Novelty and Difficulty of the Questions

"From one perspective the issues in this case were neither novel nor difficult. However, while it appears on its face to be patently ridiculous, the theory of Plaintiff's counsel that delivering a petition and citation to a process server is an unlawful third-party communication by a debt collector is not a theory addressed in the case law. As it is difficult to find a case which says that the sun rises in the east so, too, is it difficult to find a case which says that delivery of the state court collection suit to the constable for service is not an unlawful communication to a third party. The concept is so basic that it does not need case authority; however, it is also so basic that finding case law to throw at opposing counsel is not feasible. To that extent the issues raised were "novel."

"However, with regard to challenging certification the issues were difficult. Mr. Powers was evasive, uncooperative, and cantankerous in his deposition. This case actually involved a fight over all four elements of Rule 23(a). In most of the FDCPA cases I have handled across the country at least one of those elements was not in dispute. Furthermore, it is generally rather difficult to challenge the adequacy of putative class counsel. Some of the most mediocre lawyers in the consumer bar have succeeded in getting certified as class counsel. I regard a challenge to the adequacy of a class representative and her attorney as difficult, even with the poor lawyering and ridiculous theories asserted by Plaintiff's attorney in this case.

### C. The Skill Required to Perform the Legal Services Properly

"As a general matter above-average legal skill is needed to defend a class action. This type of case typically requires attorneys with extensive experience in both consumer law and class actions. In my opinion getting a Plaintiff and her attorney to make the admissions that Mr. Walton and I were able to get in the depositions in this case takes a substantially high degree of expertise and experience.

### D. The Preclusion of Other Employment Due to Acceptance of this Case

"It is fundamental that an attorney can only handle so many cases at one time. While the number of cases that any individual lawyer can handle depends upon both the attorney and the nature of his or her caseload, the fact remains

that there is a direct correlation between how large and time-consuming a case is and its impact on an attorney's total case capacity. As a class action, this suit has limited the ability of my firm to take on other cases. When defending a class action, it is necessary to anticipate that a large percentage of the responsible attorney's time will be required. Consequently, it is necessary to reserve large portions of the attorney's available time in anticipation of the amount of work required in defense of a class action. This seriously restricts the ability of an attorney, or firm, to accept new cases or clients. In this case, two of my firm's attorneys with the most extensive experience in consumer litigation as well as class action litigation were required to expend a large amount of time solely in the defense of this case.

**E. The Customary Fee**

"My standard rate is $375.00 per hour. Such an hourly rate is consistent with the fees charged by attorneys with experience and qualifications comparable to mine in the State of Texas for consumer class actions. Furthermore, given my qualifications and experience described below, it is a reasonable rate that is less than the rate charged by other Texas attorneys with similar qualifications and similar practices. A full market rate for a lawyer with my experience and expertise in consumer law and class action matters is $475 to $550 per hour. (My competitors in the consumer financial services area are charging rates in that range, but I have chosen to keep my rates lower in order to serve my existing client base.) My rates at times exceed $375.00 per hour when I bill at

my standard $3,750 per day daily rate that I regularly charge for consulting on consumer protection law cases and for testifying as an expert in such cases.

### F. The Amounts Involved and the Results Obtained

"In this case, the work that was done in deposing the Plaintiff and her attorney and in responding to the motion for class certification has resulted in defeat of the class certification, a finding that Plaintiff's counsel has violated Rule 11, and a substantial victory for my client. Based upon my experience in defending consumer class actions in multiple jurisdictions across the country this is, in my professional opinion, an outstanding result.

### G. The Time Limitations Imposed by the Client or by the Circumstances

"This was not a significant factor. However, because of the limited amount of time to which Plaintiff's counsel would agree for an extension of time to respond to the motion for class certification we had to begin preparing the response to the motion using rough drafts of the depositions. This resulted in the final response taking longer than it would have taken if we could have waited until the final transcripts were prepared.

### H. The Nature and Length of the Professional Relationship with the Client

"My firm has represented Wolpoff in other matters over the last three years, and $375.00 per hour is my standard rate for this client. The rate has not been increased for the last two years. Due to the rapport and the level of trust and confidence existing between my firm and Wolpoff, the attorney's fees

incurred by Wolpoff are substantially less than would otherwise have been the case. As a result of this ongoing relationship, I was able to represent Wolpoff in the defense of this case with far less time spent in explanations and client conferences than would be normal with a more typical client.

**I. The Experience, Reputation, or Ability of Defendant's Attorneys**

"I am a 1980 graduate of Trinity University in San Antonio, Texas, with a B.A. in history, and a 1983 graduate of the University of the Texas School of Law. I have been licensed to practice law in the State of Texas since November 4, 1983. I am admitted to practice law before the Texas Supreme Court, the United States Supreme Court, the United States Courts of Appeals for the Second, Fifth, Seventh, and Ninth Circuits, all four United States District Courts for the State of Texas, and the United States District Courts for the Eastern and Western Districts of Wisconsin, the Northern and Southern Districts of Indiana, and the Central District of California. I have been certified as a specialist in Consumer and Commercial Law by the Texas Board of Legal Specialization. I have been repeatedly recognized as a Texas Super Lawyer, and I am a Fellow of the American College of Consumer Financial Services Lawyers.

"I am the President of Barron, Newburger, Sinsley & Wier, PLLC, an Austin, Texas-based law firm with offices in Austin, Houston, the Dallas area, Tampa, Florida, and Scarsdale, New York. I have worked for that firm and its predecessors continuously since prior to the time I was licensed in its evolution from Barbara M. Barron & Associates to Barron, Newburger & Rowe, P.C., to

Barron, Newburger & Associates, P.C., to Barron & Newburger, P.C., to the present firm, which was formed in 2007.

"In addition to my law firm employment I am also an adjunct faculty member of the University of Texas School of Law, where I have taught consumer protection law since 1999. I am also the President of Fair Debt Consultants, LLC, through which I provide training and management consulting services to the debt collection industry.

"I have practiced consumer and commercial law in Texas since 1983. I am a past Chairman of the Consumer Law Section of the State Bar of Texas, and I have served as Chairman of both the Texas State Bar's Advisory Commission and its Exam Commission on board certification in consumer and commercial law. I am also a member of the Commercial Law League of America, and I have served as Chair Emeritus to the Fair Debt Collection Practices Act Committee of that organization, which committee I chaired for four years. In 1997, I served on the Texas Supreme Court's Home Equity Foreclosure Rules Task Force, and I currently serve on another such committee, working on revising the home equity foreclosure rules.

"I am a frequent speaker at Continuing Legal Education Programs around the United States. I have been a speaker and article author at seminars on fair debt collection practices sponsored by the State Bar of Texas, Texas Tech Law School, University of Houston Law Foundation, South Texas College of Law, Oklahoma City University School of Law, University of Mississippi School of Law,

the State Bar of Arizona, the State Bar of Georgia, the State Bar of Hawaii, the State Bar of Kansas, the State Bar of Missouri, the Suffolk County (New York) Bar Association, the Ohio Creditors Attorneys Association, The Tennessee Bar, various regions of the Commercial Law League of America, the National Association of Retail Collection Attorneys, the U.S. Foreclosure Network, The National Association of Credit Management, The Conference on Consumer Finance Law, PLI, and the North American Collection Agency Regulatory Association, and I have been quoted on Fair Debt cases in the *National Law Journal, Lawyer's Weekly USA,* and *The Texas Lawyer,*

"I am the principal author of M. Newburger and B. Barron, *Fair Debt Collection Practices: Federal and State Law and Regulation* (Sheshunoff & Pratt 2002)., M. Newburger and B. Barron, *The Guide to Fair Debt Collection Practices Law in the United States* (Faulkner & Gray, Inc. 2000), and the two earlier editions of that book. I am also a co-author and member of the Manual Committee for the *Texas Collection Manual – Third Edition,* which has been published by the State Bar of Texas, and a contributing author to *Manual of Credit and Commercial Laws,* 93rd Edition, (National Association of Credit Management 2002), and *The Practice of Consumer Law* (National Consumer Law Center) (Chapter 13).

"In addition to my seminar articles I am the author of the following published articles:

"Unreasonable Debt Collection Practices." *Caveat Vendor,*

Volume 15, No. 2, pp. 25 - 27, 1990.

"Recent Developments Under the Fair Debt Collection Practices Act." *Commercial Law Bulletin*, Volume 8, No. 1, pp. 12 - 19, 1993.

"Acceleration Notices and Demand Letters," *Consumer Finance Law Quarterly Report*, Vol. 47, No. 4, pp. 338-351, 1993.

"Better Defense Through Giving Up: Some Thoughts on Defending Fair Debt Cases." *Commercial Law Bulletin*, Vol. 10, No. 6, pp. 21 - 33.

"FDCPA Case Law Review," *Consumer Finance Law Quarterly Report*, Vol. 51, No. 2, pp. 158-169, 1997.

"When Worlds Collide: Fair Debt Collection Practices Act vs. State Law." *Journal of Texas Consumer Law*, Volume 2, No. 4, pp. 122 - 125, 1999.

"Fair Debt Case Update III," *Consumer Finance Law Quarterly Report*, Vol. 53, No. 3, pp. 173-180, 1999.

"Pre-Judgment Collection of Legal Fees: A Right Without a Remedy?" *Consumer Finance Law Quarterly Report*, Vol. 59, No. 4, pp. 350-356, 2005.

M. Newburger, "Lucy, Charlie Brown, and the FDCPA." *Debt$^3$*, Volume 22, No. 1, pp. 8 -13, 2007.

R. Canter and M. Newburger, "Common Law Immunity for Litigation Activities Under the Fair Debt Collection Practices Act." *Consumer Finance Law Quarterly Report*, Vol. 61, No. 1, pp. 29-39, 2007.

M. Newburger, "Legal Ethics Issues for Collection Attorneys – Part One." *Debt$^3$*, Volume 23, No. 2, pp. 8 -14, 2008.

M. Newburger, "Legal Ethics Issues for Collection Attorneys – Part Two." *Debt$^3$*, Volume 23, No. 3, pp. 8 -13, 2008.

"To the extent that I have any specialized legal knowledge it is in the areas

of creditor and consumer rights. My practice, throughout the time that I have been licensed, has consisted primarily of debtor-creditor suits and consumer protection suits involving disputes over goods and services, lender liability claims, and/or collection abuse issues. I have a "boutique" practice in fair debt collection practices law, and I not only defend and consult on the defense of such cases around the United States, but also still occasionally handle plaintiffs' cases in that area of the law. I testified before a United States Congressional Subcommittee at the last oversight hearings on the Fair Debt Collection Practices Act, and Ms. Barron and I represented the Commercial Law League of America as an *amicus curiae* in *Heintz v. Jenkins*, 514 U.S. 291, 115 S.Ct. 1489 (1995), *Koons Buick Pontiac GMC, Inc. v. Nigh*, 543 U.S. 50, 125 S. Ct. 460,160 L. Ed. 2d 389 (2004), *White v. Goodman*, 200 F.3d 1016 (7th Cir. 2000), and *Riviere v. Banner Chevrolet, Inc.*, 184 F.3d 457 (5th Cir. 1999). I represented the Debt Buyers Association as *amicus curiae* in Case No. 00-50513, *Shawn Johnson, Individually and on behalf of all others similarly situated vs. Capital One Bank and NCO Financial Systems, Inc.*, an FDCPA case before the United States Court of Appeals for the Fifth Circuit that was settled before a decision was issued. Both *Heintz* and *White* were class action suits under the Fair Debt Collection Practices Act.

"My experience and abilities in consumer law have been recognized by courts in that I was certified as Class Counsel in Cause No. 98-11709 in the 126th District Court of Travis County, Texas, styled *Eldore and Mary Urban,*

*Defendants, and Jeffrey A. McNeal, Intervenor, On Behalf of Themselves and All Others Similarly Situated vs. FCC National Bank d/b/a First Card,* Cause No. 98-230 in the 22nd District Court of Hays County, Texas, styled *Goldenwood West Property Owners Association v. Integrated Land Assets, Inc;* Civil Action No. 3:98-CV-2466-G in the United States District Court for the Northern District of Texas, Dallas Division, styled *Exzavior Rick McCulley, Individually and As a Representative of All Persons Similarly Situated vs. Great Southern Life Insurance Company and First American Bank and Trust f/k/a First Madison Bank,* Adversary Proceeding No. 00-2018B in the United States Bankruptcy Court for the Southern District of Texas, Brownsville Division, styled *Gloria Garcia, Individually and on Behalf of All Others Similarly Situated vs. Wells Fargo Bank, N.A. d/b/a Consumer Financial Agency and/or Consumer Financial Agency, a Unit of Wells Fargo Bank, N.A.,* Civil Action No. A 02 CA 329 JN in the United States District Court for the Western District of Texas, Austin Division, styled *Chris H. Huth, individually and on behalf of all others similarly situated vs. Coldata, Inc. and Ruvin Schwartz,* Cause No. 1999-23886 in the 11th District Court of Harris County, Texas, styled *Calvin Ray Onezine vs. Universal-Dtec, Inc. and Texas Commerce Bank National Association a/k/a Chase Bank National Association,* Cause No. 17-193383-02 in the District Court of Tarrant County, Texas, 17th Judicial District, styled *Regina Dockery v. Adams Whiteaker, Robinson, Reagan & Young, P.C. and Cingular Wireless, L.L.C,.* Case No. H-05-0056 in the United States District Court for the Southern District of Texas

Houston Division, styled *Beatrice Kuykendall v. United Mortgage and Loan Investment, LLC and United Mortgage and Loan Investment Corporation,* and in Civil Action No. SA06CA0508 OLG the United States District Court for the Western District of Texas, Austin Division, styled *Adam J. Shank, Individually and on Behalf of All Others Similarly Situated v. Hudson & Keyse, LLC.* I also represented a class Defendant who became an objector in *Advanta National Bank Credit Card Terms Litigation,* MDL Docket No. 1233, *settled sub nom. Kierstad v. Advanta Corp.,* Superior Court of the State of Delaware, New Castle County, Civil Action No. 97C-08-206 VAB (Consolidated).

"I have been retained as an expert in a number of collection abuse cases in different parts of the United States, and I was accepted as an expert and allowed to testify in the following cases:

> Civil Action No. 00-CV-0114 in the United States District Court for the Eastern District of Pennsylvania, styled *Robert F. Fry, Jr. On Behalf of Himself and All Others Similarly Situated vs. Hayt, Hayt & Landau*
>
> Case No. CACE 00-001781-13 in the Circuit Court in and for Broward County, Florida, styled *Countrywide Home Loans, Inc. vs. Doris L. Gleason, et al. vs. Butler & Hosch, P.A.*
>
> Case No. 98-3763; *Kim Nabors and Otis Pye, individually and on behalf of all others similarly situated, and Bradley Cole, individually and on behalf of all others similarly situated v. Echevarria, McCalla, Raymer, Barrett & Frappier, et al.;* In the Circuit Court of the Second Judicial Circuit, In and for Leon County, Florida
>
> Cause No. GN-00-3014; *Betty J. Wendland, Patricia Wilson, and William Wilson, Judy Kirtley, Bruce Kirtley and Oscar Wood, On Behalf of Themselves and All Others Similarly Situated vs. Insurance Of America Agency, Inc., National Business Association, Inc., American National Insurance Company, Inc., American National Life Insurance Company Of*

*Texas, Inc., Roy Powers, Stan Firebaugh and Pat Archibald*; In the 201st District Court of Travis County, Texas

I was also found to be an expert in *Tenuto v. Transworld Systems, Inc.*, a class action in the Eastern District of Pennsylvania that was subsequently settled, and I was accepted and testified as an expert on legal fees in the *Dockery* case referenced above.

### J. Whether the Fee Is Fixed or Contingent

"I have performed all of my services on an hourly basis, and Wolpoff has paid all of my bills in a manner which I consider to be timely.

## Conclusions Regarding Fees

"It is my opinion that the reasonable and necessary attorney's fees incurred in defending this case, through the date of this affidavit, are $26,137.50. If the Court chooses to segregate the fees incurred solely in defending the class action portions of this case it is my opinion that the reasonable and necessary attorney's fees incurred in defending just Plaintiff's efforts at securing class certification and in seeking Defendant's legal fees are $21,824.50. It is further my opinion that such fees are usual and customary in a case of this type. The records below also reflect defendant Wolpoff's reasonable expenses and costs in this case, all of which were also necessary to the defense of this case.

"It is further my opinion that $375.00 per hour is a reasonable, necessary, usual, and customary rate for the fees to be incurred in presenting

this motion.

"It is further my opinion that should this case be appealed the sum of $18,750.00 would be a reasonable and necessary fee to respond to and argue an appeal to the United States Court of Appeals for the Fifth Circuit, and that $37,500.00 would be a reasonable fee to brief and argue this case before the United States Supreme Court.

"The foregoing matters are, within my knowledge, true and correct."

Signed this the 7th day of November, 2008.

                                                                                   Manuel H. Newburger

Sworn to and subscribed before me this 7th day of October, 2008.

ANGELINA E. HEWES
MY COMMISSION EXPIRES
March 12, 2012

Notary Public, State of Texas
My commission expires: 3-12-12

Time Records for *Gracie Lopez v. Wolpoff & Abramson, LLP and LVNV Funding LLC*; Civil Action No. 1:08-cv-510-SS in the United States District Court Western District of Texas, Austin Division

| Date | Atty | Description | Hours | Amount |
|---|---|---|---|---|
| 6/30/2008 | MHN | Conversation with Ed re: pleadings and removal issues and case strategy on Lopez. | 0.60 | 225.00 |
| 7/1/2008 | MHN | Ret'd call from Ron. Last few changes answer and supplement to civil cover sheet. Instructions to Angie. | 0.50 | 187.50 |
| | MHN | Dealt with problem with District Clerk on removal of Lopez. Call to Ed. | 0.20 | 75.00 |
| | AH | Trip to US federal courthouse to file a Notice of Removal and accompanying documents. | 0.75 | 37.50 |
| 7/3/2008 | MHN | Call from Ed Walton. | 0.20 | 75.00 |
| 7/22/2008 | MHN | Preliminary analysis of motion to certify, brief, ands exhibits in Lopez class action. | 0.60 | 225.00 |
| 7/25/2008 | MHN | Call from Ron Canter re: Lopez case strategy and scheduling order. | 0.20 | 75.00 |
| 7/28/2008 | MHN | Letter to Bryan Powers re: scheduling order; ENE. | 0.20 | 75.00 |
| 8/5/2008 | MHN | Work on discovery issues and deposition notices. Conversation w/ Ed Walton regarding same. | 0.70 | 262.50 |
| 8/11/2008 | MHN | Drafted rule 269a) disclosures. | 0.50 | 187.50 |
| 8/14/2008 | MHN | Revisions to discovery control plan. | 0.50 | 187.50 |
| 8/20/2008 | MHN | Call from Ed re: discovery issues. | 0.40 | 150.00 |
| | MHN | Reviewed and revised interrogatory responses. Reviewed the proposed Request for Production of Documents responses from Ed. | 0.60 | 225.00 |
| | MHN | Finalized Rule 26 disclosures. | 0.20 | 75.00 |
| 9/3/2008 | MHN | Drafted letter to Powers | 0.20 | 75.00 |
| | MHN | Call to Ron re: discovery responses; Rule 12 issues. | 0.40 | 150.00 |
| 9/3/2008 | MHN | Revised discovery responses and objections in Lopez. Research. Identified documents to produce. Research on S. Ct. process service order. | 2.10 | 787.50 |
| 9/7/2008 | MHN | Conversation with Ed Walton re: depositions next week. | 0.60 | 225.00 |

| Date | Atty | Description | Hours | Amount |
|---|---|---|---|---|
| 9/10/2008 | MHN | Call from Ed re: Deposition issues. Prepared for deposition. | 2.80 | 1,050.00 |
| 9/11/2008 | MHN | Met with Ed. Deposed Gracie Lopez. Met with Ed after. | 4.20 | 1,575.00 |
| | MHN | Prep. for Bryan Powers deposition. | 2.10 | 787.50 |
| 9/12/2008 | MHN | Finished prep. for Bryan Powers deposition. | 1.00 | 375.00 |
| | MHN | Bryan Powers deposition. Met w/ Ed and Keith after to discuss strategy. | 8.20 | 3,075.00 |
| 9/18/2008 | MHN | Call from Ron re: Motion for Summary Judgment. | 0.30 | 112.50 |
| 9/20/2008 | MHN | Work on Lopez response. | 0.50 | 187.50 |
| 9/21/2008 | MHN | Research and drafting for motion to enlarge. | 1.90 | 712.50 |
| 9/22/2008 | MHN | Work on class cert response. | 1.20 | 450.00 |
| 9/23/2008 | MHN | Conversation with Ed re: Lopez cert response issues. | 0.60 | 225.00 |
| | MHN | Work on finalizing class cert response. Prep. of motion to enlarge and order. | 5.10 | 1,912.50 |
| 9/24/2008 | MHN | Finalized cert. response motions to enlarge both time and page limit. Conversations with Ed. | 4.90 | 1,837.50 |
| 9/25/2008 | MHN | Started work on Motion for Summary Judgment response. | 1.30 | 487.50 |
| 9/29/2008 | MHN | Final editing and revisions on Lopez. Prepared proposed orders. e-Filed docs. | 4.10 | 1,537.50 |
| 10/1/2008 | MHN | Work on Motion for Summary Judgment response and objection to motion. | 1.40 | 525.00 |
| 10/2/2008 | MHN | Call from Ron re: subpoena issue. He does not want me to subpoena Lopez to the hearing. | 0.30 | 112.50 |
| 10/3/2008 | MHN | Call from Ron. | 0.20 | 75.00 |
| 10/6/2008 | MHN | Prep. for class cert. hearing. | 5.20 | 1,950.00 |
| 10/7/2008 | MHN | Call from Ed re: strategy for hearing; division of responsibilities. | 0.40 | 150.00 |
| | MHN | Finished prep. for hearing and creation of proof chart to negate each element of Rule 23(a). | 5.10 | 1,912.50 |
| 10/8/2008 | MHN | Final preparation. Went to court. Finalized Rule 11 brief and order after. | 4.20 | 1,575.00 |
| 10/13/2008 | MHN | Drafting and research for 1927 motion and order. | 2.20 | 825.00 |

| Date | Atty | Description | Hours | Amount |
|---|---|---|---|---|
| 10/13/2008 | MHN | Finalized 1927 documents. | 0.80 | 300.00 |
| 10/13/2008 | MHN | Drafting and revisions on affidavit in support of the Rule 11 and 1927 motions. | 1.80 | 675.00 |
| 11/3/08 | MHN | Work on fee application. | 1.10 | 412.50 |
| 11/6/08 | MHN | Revisions to affidavit and time records. | 0.70 | 262.50 |
| 11/7/08 | MHN | Revisions to Memorandum. | 0.60 | 225.00 |
| | **SUBTOTAL:** | | | 26,625.00 |

Additional Charges:

| Date | Description | Amount |
|---|---|---|
| 6/30/2008 | Certified copies for removal | 37.00 |
| 7/1/2008 | One half of filing fee for removal to federal court | 175.00 |
| 7/11/2008 | File and get certified copies | 3.00 |
| 7/14/2008 | Postage | 19.84 |
| 8/10/2008 | Postage | 5.74 |
| 9/11/2008 | Postage | 15.61 |
| 10/13/2008 | Postage | 15.42 |
| 10/16/2008 | Pacer | 5.76 |
| **Total costs** | | 277.37 |